## Commonwealth v. Zehner Brothers Farm Products

*Gailey C. Keller, District Attorney*, for Commonwealth.

*Robert E. Bull*, for defendant.

MYERS, *P. J.*, November 9, 1972—

## STATEMENT OF FACTS

Defendants were charged with having, on or about July 23, 1971, unlawfully allowed certain injurious materials to run, flow, wash or be emptied into Fishing Creek in Columbia County, Pa., being waters of the Commonwealth of Pennsylvania, contrary to the Act of June 22, 1937, P.L. 1987, as amended. After a hearing was held by a local district magistrate, defendants were found guilty and sentenced to pay a fine of $1,000 and costs. Defendants appealed their conviction to this court and the appeal was allowed. The case was heard de novo by this court. The statute under which defendants were prosecuted, Act of June 22, 1937, P.L. 1987, as amended, (35 PS §§691.1, et seq.) is more specifically set forth in sections 301 and 401.

Section 301 states: "No person shall place or permit to be placed, or discharged or permit to flow,

or continue to discharge or permit to flow, into any of the waters of the Commonwealth any industrial wastes, except as hereinafter provided."

The purpose of the act is set forth in its title as follows: "An Act to preserve and improve the purity of the waters of the Commonwealth for the protection of public health, animal and aquatic life."

Section 401 states: "It shall be unlawful for any person . . . to put or to allow any substance of any kind or character injurious or inimical to the public health or to animal or aquatic life . . . to be turned into or to run or flow or wash or to be emptied into any waters of the Commonwealth."

Section 401 is entitled "Petty pollutions prohibited." The act further provides that violation of the statute is to be declared a nuisance and imposes criminal sanctions for violations.

The word "pollution" as used in the statute is defined to mean any noxious and deleterious substances rendering unclean the waters of the Commonwealth to the extent of being harmful or inimical to the public health or to animal or aquatic life or to the use of such waters for domestic water supply, or industrial purposes, or for recreation.

There is no dispute that Fishing Creek shall be construed to be among the "waters of the Commonwealth."

The facts of this case are briefly as follows:

Defendants own and operate a large farm in Fishing Creek Township, Columbia County, Pennsylvania.

As an incident to the farming procedures, the fields are periodically sprayed with a toxic insecticide mixture. On or about July 22, 1971, an employe of defendants, one Gerald DeFrain, was spraying certain of defendants' potato fields which

adjoin Fishing Creek. In the spraying operation, a gas pump was used to pump water from Fishing Creek for mixing purposes. The pump was located some 25 feet from the water and the spraying apparatus some 25 feet beyond the water line. The insecticide mix was identified as thioden-miscible with an additive called poly-ram 80-w. The spraying was done entirely by defendants' employe DeFrain. Neither of the defendants actually participated in the spraying operation. DeFrain concluded the operation at about 8:00 p.m. that evening, leaving the thioden containers and the polyram container in the vicinity of Fishing Creek. Witnesses for the State stated that they observed white residue from around the containers leading down a ditch into Fishing Creek. It is the Commonwealth's contention that the death of several thousand fish in Fishing Creek was the direct result of the pollution to the creek caused by said residue.

## DISCUSSION

Defendants deny that they were guilty of any wrongdoing under the statute in that neither defendant was present at the time of the spraying operations; that they had no knowledge of the alleged guilty act; and that defendants neither authorized, allowed, permitted or knew of the circumstances leading up to the alleged pollution of the waters of Fishing Creek.

In general, under the common law, one is not liable for the criminal acts of another in which he did not participate directly or indirectly. But the common law rule has no application herein. The offense was made so purely by statute, and whether the penalty may be imposed without direct proof of defendants' knowledge or assent, therefore, be-

comes a question of statutory construction. Guilty knowledge or guilty intent is in general an essential element in crimes at common law, but whether criminal intent or guilty knowledge is a necessary ingredient of a statutory offense is a matter of construction to be determined from the language of the statute, and in view of the manifest purpose and design of the same. Intent need not be shown to support a conviction under a valid statute in the exercise of police power: Commonwealth v. Jackson, 146 Pa. Superior Ct. 328.

Many statutes which are in the nature of police regulations, as are the statutes in question in this case, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public: Commonwealth v. Jackson, supra.

While it is a general rule that an employer is not, in almost all cases, criminally responsible for the unlawful acts of his employe, unless he consents to, approves or participates in such acts, courts all over the nation have struggled when applying this general rule to regulatory statutes passed under the State's police power. At common law, any attempt to invoke the doctrine of respondeat superior in a criminal case would have run afoul of our deeply ingrained notions of criminal jurisprudence that guilt must be personal and individual. In recent decades, however, many States, including Pennsylvania, have enacted detailed regulatory provisions in fields which are essentially noncriminal such as pure foods and drug acts, child labor statutes, clean streams act, anti-pollution measures, etc. The court, in Commonwealth v. Koczwara, 397 Pa. 575, stated:

"Such so-called statutory crimes are in reality an

attempt to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature with the punishment totally unrelated to questions of moral wrongdoing or guilt. It is here that the social interest in the general well-being and security of the populace has been held to outweigh the individual interest of the particular defendant. The penalty is imposed despite the defendant's lack of criminal intent or mens rea."

In the instant case, defendants have sought to surround themselves with all the safeguards provided to those within the pale of criminal sanctions. They have argued that a statute imposing criminal responsibility should be construed strictly with all doubts resolved in their favor. While defendants' position is entirely correct, we must remember that we are dealing here with a statutory provision within the Commonwealth's plenary police power. In the field of protection of public water supply and the streams of this Commonwealth, the legislature has enacted a code aimed at regulating pollution and other deleterious substances that may be emptied into the streams and waters of this Commonwealth.

In Commonwealth v. Weiss, 139 Pa. 247, the court said:

"Whether a criminal intent, or a guilty knowledge is a necessary ingredient of a statutory offence . . . is a matter of construction. It is for the legislature to determine whether the public injury, threatened in any particular matter, is such and so great as to justify an absolute and indiscriminate prohibition."

Our courts construe the statute in question in the

light of its letter and spirit and its manifest purpose: Commonwealth v. Koczwara, supra. See also Commonwealth v. Jackson, supra.

In Commonwealth ex rel, Shumaker v. New York & Pennsylvania Co., Inc., 367 Pa. 40, the court quoted the late Justice Maxey, who said in Commonwealth ex rel. Chidsey v. Black, 363 Pa. 231: "In protecting its streams the Commonwealth is not limited to any one remedy." It has also been said that stream pollution is one of the greatest evils that threatens the healthfulness, usefulness and beauty of our many rivers and smaller streams. The evil has grown to alarming proportions. Many of the waters in our public streams are now so overloaded with poisonous matter that they have become carriers for disease and destroyers of all forms of aquatic life.

The legislative intent of the statute is clearly set forth in the title of the act referred to earlier in this opinion.

In neither of the applicable sub-sections is there any language that would require the prohibited acts to have been done knowingly, willingly or intentionally for a violation to occur, there being a significant absence of such words as "knowingly, willingly and intentionally, etc." See Commonwealth v. Koczwara, supra. Instead, the words used are "allow, permit, etc.," which are to be given their ordinary use and meaning. (See the section relating to presumptions in ascertaining legislative intent: Act of May 28, 1937, P.L. 1019, 46 PS §552.) In Black's Law Dictionary, these words are defined interchangeably and further defined as "to sanction, either directly or indirectly, . . . to acquiesce."

There is evidence in this case that defendants knew of the spraying operation and obviously di-

rected their employe to carry out the same. Defendants further knew, or should have known, that the label on the thioden-miscible container which was used in the spraying operation, carried a warning that included, among other things, the following: "THIS PRODUCT IS TOXIC TO FISH AND WILDLIFE . . . DO NOT CONTAMINATE WATER BY CLEANING OF EQUIPMENT OR DISPOSAL OF WASTES . . ." This container was found near the stream with evidence of its substance leading into the stream via the aforesaid ditch. By sample count, the Commonwealth witnesses testified that some 5,000 to 7,000 fish were killed in the downstream waters below this spot. They further testified that no dead fish were found in the upstream waters above this spot.

Finally, defendants argue that there is insufficient evidence identifying the spraying operation as that which caused the fish kill. Obviously, it was necessary for the Commonwealth in this case to meet its burden of proof by the use of what is known as circumstantial evidence. Circumstantial evidence, although not as strong as positive evidence, does have probative value and is admissible as evidence in a criminal case. Circumstantial evidence includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or be deductions of reasons from the circumstances of the particular case, or of reason aided by experiences. Probably the most vivid and well-known illustration of circumstantial evidence is that stated by Chief Justice Shaw of Massachusetts who said: "When footprints are discovered after a recent snow, it is certain that some animated being has passed over the snow since it fell; and from the form and number of footprints it

can be determined with equal certainty whether the footprints are those of a man or a bird or a four-legged animal." We conclude that the circumstantial evidence produced by the Commonwealth has sufficiently met its burden of proof. Therefore, we make the following

### ORDER OF COURT

And now, November 9, 1972, we find the above-captioned defendants guilty as charged and sentence them to pay the costs of prosecution and a fine of $500 to the Commonwealth of Pennsylvania for the use of the County of Columbia within 30 days from the date hereof.